UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-194-FDW

| | |
|---|---|
| ANOTHONY RUDOLPH RANKINS, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>)<br>)<br>WENDALL HARGRAVE, )<br>GEORGE SOLOMON, )<br>DAVID HATLEY, )<br>)<br>Defendants. )<br>_____) | **ORDER** |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, filed under 42 U.S.C. § 1983, (Doc. No. 1), and on Plaintiff's application to proceed in forma pauperis, (Doc. No. 2). See 28 U.S.C. §§ 1915(e)(2); 1915A.

The Court first notes that Plaintiff's trust fund account statement shows that as of April 24, 2014, Plaintiff had $0.13 in his trust account. (Doc. No. 5 at 2). The Court will grant Plaintiff's application to proceed in forma pauperis.

I.     **BACKGROUND**

Pro se Plaintiff Anthony Rudolph Rankins, a North Carolina state inmate currently incarcerated at Lanesboro Correctional Institution, filed this action on April 21, 2014, pursuant to 42 U.S.C. § 1983. In his Complaint, Plaintiff names as Defendants Wendall Hargrave, identified as the Administrator of Lanesboro; George Solomon, identified as Director of Prisons for the State of North Carolina; and David Hatley, identified as Unit Manager of the Union Unit at Lanesboro. (Doc. No. 1 at 2). Plaintiff purports to bring a claim of cruel and unusual

1

punishment under the Eighth Amendment based on his allegation that he and other inmates at Lanesboro were subjected to inhumane conditions during an emergency lockdown in November and December of 2013. A grievance attached to Plaintiff's Administrative Remedy Statement indicates that the prison was placed "under a code 1 lockdown due to an incident that occurred." (Doc. No. 3 at 2). Specifically, Plaintiff alleges the following facts in support of his Eighth Amendment claim:

> From November 15th to December 31st of 2013, while housed in union unit cell JE 19[,] [t]he inmates of JE dormitory were made to live in inhumane conditions while on emergency lockdown.
> The inmates had to shower while handcuffed which made it hard to balance yourself and created a high risk for falling. Plus it is impossible to clean yourself while handcuffed.
> The inmates were given no exercise opportunity. I did not get exercise until January 31, 2014.
> [Forty-eight] inmates were given the same rag for cleaning our cell. We only had that opportunity twice[] [w]hile plaintiff was housed on union unit during the emergency lockdown.
> The inmates were given nothing for cleaning the toilet. The inside of the toilets were filthy.
> The inmates were given no choice, and had to eat in the cells while smelling the filthy toilets.
> The inmates were not given the opportunity to sweep or mop their rooms, both the mop and broom could have been given to the inmates without the cell doors being open.
> On the 31st day of December 2013 Plaintiff was moved from Union Unit to Moore Unit and did not get to exercise until January 31st 2014, 77 days from 11/15/2013. Some of the inmates did get to exercise before that date.

(Doc. No. 1 at 2). Plaintiff alleges that, as Director of Prisons, Defendant Solomon is legally responsible for the operation of the North Carolina Department of Public Safety and that he knew about the conditions; as the Acting Administrator of Lanesboro, Defendant Hargrave gave the order implementing the emergency lockdown; and, as Unit Manager of Union Unit, Defendant Hatley knew about the conditions and told Plaintiff that he was "only doing what I'm told." (Doc. No. 1 at 3). Plaintiff seeks injunctive and declaratory relief as well as

2

compensatory damages.

## II.  STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, § 1915A requires an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and the court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief. In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989).

## III.  DISCUSSION

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Extreme deprivations are required, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9 (1992). The plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 847 (1994). A plaintiff must also allege "a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler v. Waters, 989 F.3d 1375, 1381 (4th Cir. 1993).

A reviewing court "owe[s] 'substantial deference to the professional judgment of prison administrators.'" Beard v. Banks, 548 U.S. 521, 528 (2006) (quoting Overton v. Bazzetta, 539 U.S. 126, 132 (2003)). "[R]estrictive prison regulations are permissible if they are 'reasonably related to legitimate penological [objectives],' and are not an 'exaggerated response' to such objectives." Id. (quotations omitted) (quoting Turner v. Safley, 482 U.S. 78, 87 (1987)). The length of time Plaintiff was subjected to the harsh conditions is an important factor in analyzing whether his constitutional rights were violated. See Beverati v. Smith, 120 F.3d 500, 504 (4th Cir. 1997).

Here, the alleged instances of unconstitutional conduct, whether considered apart from one another or cumulatively, do not rise to the level of a constitutional violation under the Eighth Amendment. Plaintiff first complains about inmates not being allowed to clean their cells properly during the lockdown, resulting in unsanitary conditions, including "filthy," smelly toilets. Although prolonged unsanitary conditions can rise to the level of an Eighth Amendment violation, Plaintiff does not allege that prisoners were deprived of the ability to clean their cells properly longer than the duration of the lockdown, which lasted from November 15, 1993, to December 31, 2013. Being subjected to the alleged unsanitary conditions for this length of time falls short of stating an Eighth Amendment claim. See Beverati, 120 F.3d at 504 (holding that administrative segregation for six months with vermin; human waste; flooded toilet; unbearable heat; cold food; dirty clothing, linens, and bedding; longer periods in cell; no outside recreation; no educational or religious services; and less food was not so atypical as to impose significant hardship).

As for Plaintiff's allegations regarding being required to wear handcuffs in the shower during the lockdown, these allegations also fail to state a claim of cruel and unusual punishment,

4

as prison officials were clearly within their right to require restraints during the lockdown as a security measure. See LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993) (finding no Eighth Amendment violation where inmates were restrained in handcuffs and shackles during their showers); Bolding v. Va. Beach Corr. Ctr., No. 3:11cv105-HEH, 2012 WL 1438815, at *3 (E.D. Va. Apr. 25, 2012) ("[P]laintiff has failed to allege facts that suggest requiring him to shower in restraints amounted to anything more than 'routine discomfort.'").

Plaintiff also complains that he was denied the right to outdoor exercise from the beginning of the lockdown until the end of January 2014. The Fourth Circuit has held that "complete deprivation of exercise for an extended period of time violates Eighth Amendment prohibitions against cruel and unusual punishment." Mitchell v. Rice, 954 F.2d 187, 191 (4th Cir. 1992). However, whether the denial of outdoor exercise constitutes a constitutional violation depends on "the totality of the circumstances." Id. "[I]n considering the totality of conditions pertinent to the right of exercise at a given institution, elements including the overall duration of incarceration, the length of time for which prisoners are locked in their cells each day, . . . and the practical opportunities for the institution to provide prisoners with increased exercise opportunities must be considered." Id. (quoting Dawson v. Kendrick, 527 F. Supp. 1252, 1300 (S.D. W. Va. 1981)). Finally, as previously noted, the Fourth Circuit has also held that to state an Eighth Amendment claim based on conditions of confinement, a plaintiff must allege "a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler, 989 F.2d at 1381.

Plaintiff's allegation that he was not allowed any outdoor exercise from November 2013 until January 31, 2014, does not rise to the level of cruel and unusual punishment, given that the prison was on emergency lockdown for a significant part of that time, and that he does not allege

5

that he was denied the right to exercise inside his cell.[1]  Accord Norwood v. Vance, 591 F.3d 1062, 1069-70 (9th Cir. 2010) (stating that during a lockdown prison officials have the authority to disallow outdoor exercise to protect the safety and security of the institution).  Finally, Plaintiff has failed to allege that he sustained an injury as a result of being denied the right to outdoor exercise.  The Court further notes that while Plaintiff does not state why he continued to be denied the right to outdoor exercise after the lockdown ended, the additional four weeks when he was allegedly denied the right to outdoor exercise did not rise to the level of an Eighth Amendment violation.  In sum, Plaintiff has failed to state a claim for an Eighth Amendment violation based on the alleged conditions of confinement.[2]

## IV.     CONCLUSION

For the reasons stated herein, Plaintiff's Complaint will be dismissed for failure to state a claim.

---

[1] Plaintiff alleges in the Complaint that he was denied the right to exercise, but does not identify whether the denial included the right to exercise inside his cell.  However, his grievances make clear that he was complaining only about the lack of outdoor exercise.  See (Doc. No. 3 at 1) ("We have had no opportunity for exercise outside of our cells at all.").  Generally, a constitutional violation has not occurred where outdoor exercise is denied if the inmates can still exercise inside the prison.  See Jones v. Kelly, No. 89-6651, 1990 WL 33936, at *1 (4th Cir. Mar. 8, 1990) (unpublished) ("It is well settled that jails may provide space for indoor exercise and recreation as an alternative to outdoor recreational facilities, absent medical evidence demonstrating a need for outdoor exercise."); Coil v. Peterkin, No. 1:07cv145, 2009 WL 3247848, at *12 (M.D.N.C. Oct. 5, 2009) (finding no constitutional violation where "it [was] undisputed that [the inmate] was given the opportunity to exercise inside the jail" even though he was not allowed outdoor exercise because of security concerns), aff'd, 401 Fed. App'x 773 (4th Cir. 2010).

[2] Because Plaintiff does not state an Eighth Amendment claim in the first instance, the Court does not analyze his claims as to each individual Defendant and any possible defenses to liability.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Complaint, (Doc. No. 1), is **DISMISSED** for failure to state a claim.

2. The Clerk is directed to terminate this action.

Signed: May 13, 2014

Frank D. Whitney
Chief United States District Judge